IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02313-STV

AGI RELI PETROCZKY; and
VIKTOR OLIVER BARTHA,

    Plaintiffs,

v.

ANDREW LAMBRECHT;
MATTHEW D. EMRICH;
UR M. JADDOU;
MERRICK GARLAND; and
ALEJANDRO MAYORKAS,

    Defendants.
_____

# ORDER
_____

Chief Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) (the "Motion"). [#10] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##19, 20] This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, as well as oral argument held on May 20, 2025 [#23]. For the following reasons, the Motion is **GRANTED**.

I.   **BACKGROUND**[1]

Plaintiff Agi Reli Petroczky is a United States citizen and Plaintiff Viktor Oliver Bartha is a noncitizen, originally from Hungary.  [#1 at ¶¶ 1–2]  On February 14, 2018, Plaintiffs were married in Aspen, Colorado.  [*Id*. at ¶ 16]  On June 1, 2020, Petroczky filed a Form I-130 petition with the United States Citizenship and Immigration Services ("USCIS") seeking permanent resident status for Bartha based on their marriage.  [*Id*. at ¶ 17]  On February 23, 2021, USCIS interviewed Plaintiffs about their application and issued Requests for Evidence ("RFE") asking Plaintiffs to submit additional documents, including evidence of "a shared life together."  [##1 at ¶ 18; 1-1 at 3]  USCIS interviewed Plaintiffs again on March 8, 2022.  [##1 at ¶ 18, 1-3 at 1]  Plaintiffs submitted several documents in support of their application, including jointly filed income tax returns, joint bills, joint vehicle registrations, joint vehicle insurance policies, a joint bank account, a joint residential lease, and letters of support from friends and family.  [#1 at ¶ 20]

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint (the "Complaint") [#1], which must be taken as true when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).  The Court also considers the attachments to the Complaint as Plaintiff references them in his Complaint. *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) ("In evaluating a motion to dismiss, [a court] may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference."). The Court also considers Defendants' exhibits concerning Plaintiffs' living arrangements and the written statement by Petroczky about her marriage to Bartha as these are referred to in Plaintiffs' Complaint and are central to their claims. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference").  The Court does not consider any additional factual allegations raised by Plaintiff in briefing.  See *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (disregarding additional factual claims asserted in briefing on a motion to dismiss, explaining that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss").

On November 22, 2022, after USCIS determined that Plaintiffs' marriage was a "marriage of convenience," USCIS conducted further investigation through site visits to the Aspen Pitkin County Housing Authority, to the residence of Bartha's children and their mother, and to Plaintiffs' allegedly mutual residence. [##1 at ¶ 21; 1-2 at 4] During the site visits, the officers learned that: (1) Bartha did not live with Petroczky at the apartment where they claimed to live together in marriage; (2) after his marriage with Petroczky, Bartha became the co-owner of the residence where his children and their mother lived; (3) according to a neighbor, Bartha lived with his children and their mother as a family, and the family was away for vacation in Hawaii for Thanksgiving; and (4) Petroczky was living with her "friend" Ben and not with Bartha. [#1-2 at 4] Also during the officers' visit to Petroczky's residence on November 22, 2022, Petroczky signed a sworn statement stating that she married Bartha to help him with immigration benefits, that she had never lived with him, and that they had never consummated their marriage. [*Id*.; #10-3] On March 3, 2023, USCIS issued a Notice of Intent to Deny ("NOID") Petroczky's Form I-130 petition. [#1-2 at 1] The NOID listed and explained the deficiencies with the evidence that Petroczky submitted, including inconsistencies that called into question the credibility and validity of the marriage. [*Id*. at 1-5] The NOID gave Petroczky thirty days to submit evidence as to why USCIS should not deny the Form I-130. [*Id*. at 4] On May 15, 2023, Petroczky responded to the NOID providing additional documentation, and claiming her statement was given under extreme duress due to severe medical issues during the site visit. [##1 at ¶¶ 22, 24-25; 1-2 at 6-57] She cited a myoma causing excessive bleeding, low iron levels, and a 5-centimeter tumor, all of which she substantiated with medical evidence submitted to USCIS. [*Id*.]

On June 30, 2023, USCIS denied Petroczky's Form I-130. [#1-3] The decision presented USCIS's detailed analysis of the evidence, including Petroczky's response to the NOID, and outlined how the evidence failed to support a finding that Petroczky proved by a preponderance of the evidence that Plaintiffs were in a bona fide marriage. [##1 at ¶ 27 (listing thirteen (13) of USCIS's reasons for denying the application); 1-3] USCIS also concluded that the couple committed marriage fraud because they married "solely to assist [Bartha] to circumvent immigration law and obtain lawful permanent resident status." [#1-3 at 5] Petroczky timely appealed USCIS's denial to the Board of Immigration Appeals ("BIA"). [#1 at ¶ 28] After a de novo review, the BIA denied the appeal on April 10, 2024, concluding that Petroczky "ha[d] not met her burden to establish that her marriage to the beneficiary is valid for immigration purposes such that the beneficiary may be considered to be her spouse." [##1 at ¶ 28; 1-4 at 1] The BIA stated that she "provided insufficient evidence of a bona fide marital relationship in light of the various interview discrepancies, and the concerns raised during site investigations, many of which were not otherwise persuasively resolved." [#1-4 at 1] The BIA did not specifically make a finding that Plaintiffs committed marriage fraud but noted that Petroczky "may file a new visa petition on behalf of the beneficiary with evidence that the beneficiary qualifies for the benefit sought." [#1-4 at 2]

On August 21, 2024, Plaintiffs brought the instant action under the Administrative Procedure Act ("APA") asking this Court to review whether the denial of their Form I-130 was in error. [#1] On November 18, 2024, Defendants filed the instant Motion seeking dismissal of Plaintiff's Complaint. [#10] Plaintiffs have responded to the Motion [#13],

and Defendants have replied [#15].  On May 20, 2025, this Court held oral argument on the Motion and took the Motion under advisement.  [#23]

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.   ANALYSIS

Plaintiffs claim the denial of their Form I-130 was arbitrary and capricious and ask this Court to review the decision under the APA.  [#1 at ¶¶ 45-65]  Defendants argue that the Court should dismiss the challenge to the denial of Petroczky's Form I-130 petition for failure to state a claim upon which the Court could grant the requested relief because Plaintiffs allege no action contrary to law and appear to ask the Court to reweigh the evidence, which it cannot.[2]  [#10 at 10-15]  The Court first sets forth the applicable statutory and regulatory framework and then addresses Defendants' argument.

---

[2] Defendants also argue the Court must dismiss Plaintiffs' apparent challenge to the denial of Barth's Form I-485 application for lack of subject matter jurisdiction because Congress precluded judicial review of adjustment applications under 8 U.S.C. § 1252(a)(2)(B)(i).  [#10 at 9]  But Plaintiffs' complaint is directed solely at the denial of the Form I-130 petition and does not reference Form I-485 or raise any specific claims related to its adjudication.  [#1]  Accordingly, the Court need not address the jurisdictional issue as to Form I-485.

### A. Statutory and Regulatory Framework

Under the Immigration and Nationality Act ("INA"), a non-citizen who marries a United States citizen is classified as an "immediate relative." 8 U.S.C. § 1151(b)(2)(A)(1). "To receive an immigrant visa, the U.S. citizen must first file Form I-130 Petition for Alien Relative, showing the legality of the marriage." *Ahmadabadi v. Lambrecht*, No. 15-cv-01459-RM-MEH, 2015 WL 7110796, at *3 (D. Colo. Oct. 20, 2015) (citing 8 C.F.R. §§ 204.2(a)(1), (a)(1)(iii)(B)), *report and recommendation adopted as modified*, 2015 WL 7075669 (D. Colo. Nov. 12, 2015). Once an I-130 is approved, the noncitizen may then seek adjustment of status by filing Form I-485 under 8 U.S.C. § 1255(a), which allows the Attorney General or Secretary of Homeland Security, in their discretion, to adjust the applicant's status to that of a lawful permanent resident if the applicant meets statutory requirements, including lawful admission, eligibility for an immigrant visa, and visa availability. For both applications, the applicant bears the burden of proof to show that the beneficiary is entitled to the relief requested. *Matter of Phillis*, 15 I. & N. Dec. 385, 386 (BIA 1975) ("The burden is on the petitioner to establish eligibility for the benefits sought."); *see also Mukui v. Dir. U.S.C.I.S. Philadelphia Dist.*, 852 F. App'x 704, 707 (3d Cir. 2021) ("To establish eligibility for an I-130 Petition, the applicant bears the initial burden to prove a legitimate, good-faith marriage by a preponderance of the evidence.").

"Federal Regulations describe situations when the agency must deny a petition. One such bar is the fraudulent marriage prohibition." *Awan v. Mather*, No. 2:23-cv-00258-DBB-DAO, 2023 WL 7002617, at *5 (D. Utah Oct. 24, 2023) (quotations omitted). "Under Section 204(c) of the INA, USCIS will not approve a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the

7

immigration laws." *Id*. (quotations omitted). "USCIS will deny a petition . . . on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy [to fraudulently enter into a marriage], regardless of whether that alien received a benefit through the attempt or conspiracy." *Id*. (quotations omitted). "To be 'substantial and probative,' the evidence must establish that it is more than probably true that the marriage is fraudulent." *Id*. (quotations omitted).  The government "examin[es] . . . all of the relevant evidence and [makes] a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent." *Id*. (quotations omitted).  "Significant inconsistencies coupled with minimal documentary evidence of a shared life may support a conclusion that a petitioner has not met his or her burden to establish the bona fides of the marriage." *Id*. (quotations omitted). "[E]ven if particular facts may not [be] sufficient individually to establish a finding of fraud, those same facts, when taken together, may provide ample support for an agency to infer a fraudulent marriage." *Id*. (quotations omitted). "Should the government find substantial and probative evidence of marriage fraud, it issues a NOID so that the petitioner has an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered. The petitioner then has the burden to rebut the government's finding." *Id*. (quotation and footnote omitted).

"Once agency action is challenged as arbitrary or capricious, a district court reviews that action under the APA as if it were an appellate court." *Olumuyiwa v. United States Citizenship & Immigr. Servs.*, No. 1:22-cv-02530-NYW, 2023 WL 7686297, at *4 (D. Colo. Nov. 15, 2023) (citing *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994)).  Under the APA, a court may hold unlawful and set aside agency

8

action if it finds the agency's action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[,]" or "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(A)-(B).  "An APA review is very deferential to the agency, presuming that the agency's action is valid and permissible."  *Mohammed v. Holder*, 47 F. Supp. 3d 1236, 1241 (D. Colo. 2014) (quotation omitted).  "This places the burden on [Plaintiff] to defeat that presumption."  *Id*.  "As part of the appeal, the Court ascertain[s] whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."  *Olumuyiwa*, 2023 WL 7686297 at *4 (quotation omitted).

"A court will also set aside the agency's decision if it is not supported by substantial evidence in the record[.]"  *Awan*, 2023 WL 7002617 at *6 (quotation omitted).  "For the evidence to be 'substantial,' the agency's record must contain enough facts supporting the decision that a reasonable mind could accept it as adequate to support [the] conclusion."  *Id*. (quotation omitted).  Nonetheless, "a court must not substitute its judgment for that of the agency and it cannot reweigh the evidence if the agency's conclusion was reasonable."  *Daraghma v. U.S. Citizenship & Immigr. Servs.*, 228 F. Supp. 3d 818, 822 (N.D. Ohio 2017).

### B. Plaintiffs' Claim

Plaintiffs contend that the BIA's denial of their Form I-130 petition was arbitrary and capricious.  [#1 at ¶¶ 45-65]  "To establish that a decision is arbitrary and capricious, [Plaintiff] must show that the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, ordered an explanation for its decision that runs counter to the evidence before the

9

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Mohammed*, 47 F. Supp. 3d at 1241 (quotation omitted). "Because the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Zzyym v. Kerry*, 220 F. Supp. 3d 1106, 1110 (D. Colo. 2016) (quotation omitted).  Here, Plaintiffs allege that: 1) they submitted substantial evidence demonstrating a legally valid and bona fide marriage, yet USCIS relied on indicia that, according to Plaintiffs, have no probative or reliable value as evidence of marriage fraud [#1 at ¶¶ 48-53, 59-65]; and 2) they were not afforded an opportunity to respond to adverse evidence relied upon by USCIS before a decision was issued, which violated their Fifth Amendment Due Process Rights [*id.* at ¶¶ 54-58].  The Court addresses each of Plaintiffs' arguments in turn.

### 1. USCIS's Consideration of the Evidence

First, Plaintiffs claim that USCIS did not properly consider the evidence presented in determining whether Plaintiffs' marriage was valid but rather relied upon insignificant details and perceived errors in the couple's testimony to make its decision.  [#1 at ¶¶ 48-53, 59-65]  Under the APA, the agency "need only consider the evidence;" it need not mention every piece of evidence it considered.  *Smith v. Garland*, 103 F.4th 1244, 1253 (7th Cir. 2024) (emphasis omitted).  To uphold USCIS's determination in this case, the Court need only find "a rational connection between the facts found and the [decision] made."  *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted).

Here, contrary to Plaintiffs' assertion, USCIS explained at length in its NOID that it considered a wide range of evidence beyond Plaintiffs' testimony regarding details of their shared marital life. This included documentation of their living arrangements, cell phone records, bank statements, affidavits from friends and family, and tax returns. [#1-2 at 3] USCIS also relied on site visits, which indicated that the Plaintiffs were not cohabiting: Bartha was found to be living with the mother of his children in a jointly owned home, while Petroczky resided with another man at a separate address. [*Id.* at 4] In addition, USCIS cited Petroczky's admission to officers that the marriage was a sham, entered into for immigration purposes, that she never lived with Bartha, and that the marriage was never consummated. [*Id.*] Indeed, it is difficult to imagine a case in which USCIS more thoroughly considered the available evidence before issuing a denial. Accordingly, the agency's decision cannot be deemed arbitrary and capricious. In short, the record supports the agency's conclusion that Plaintiffs failed to meet their burden of proving that their marriage was bona fide for immigration purposes.[3]

### 2. USCIS's Disclosure of Adverse Evidence and Plaintiff's Ability to Respond

Next, Plaintiffs claim that they did not receive the adverse evidence that USCIS used as the basis for the denial and were not given the opportunity to respond. [#1 at ¶¶ 54-58]. In the context of a Form I-130 determination, if USCIS intends to issue an adverse

---

[3] To the extent Plaintiffs ask the Court to reweigh the evidence submitted to establish a bona fide marriage in order to overturn or remand the BIA's decision, the Court may not do so. Courts reviewing under the APA cannot reweigh the evidence or overturn agency findings simply because a plaintiff disagrees with the outcome; under the APA, the Court's role is not to substitute its judgment for that of the agency, but to ensure the agency's decision was not arbitrary, capricious, or otherwise unlawful. *See* 5 U.S.C. § 706(2); *State Farm*, 463 U.S. at 43. Where, as here, the agency articulated a rational basis for its decision and considered the relevant facts, the Court must uphold that decision.

decision based on derogatory information "of which the applicant or petitioner is unaware," USCIS must advise the petitioner of this fact and give the petitioner "an opportunity to rebut the information and present information" before the decision is rendered. 8 C.F.R. § 103.2(b)(16)(i). But "8 C.F.R. § 103.2(b)(16) does not require the agency to provide in painstaking detail the evidence of fraud it finds." *Rosati v. Mayorkas*, 691 F. Supp. 3d. 597, 605 (N.D.N.Y. 2023). Rather, USCIS may comply with the regulation through summarizing derogatory evidence in a NOID, putting the Petitioner on notice of the relevant evidence, and providing an opportunity to rebut that information. *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009) (explaining the proper application of 8 C.F.R. § 103.2(b)(16)(i)).

First, as discussed above, exhibits submitted with Plaintiff's Complaint show that USCIS shared and explained all the adverse information to Plaintiffs in the NOID issued on March 3, 2023. [#1-3] The NOID listed and explained the deficiencies with the evidence that Petroczky submitted. [*Id*. at 1-2] In particular, the NOID noted that Plaintiffs submitted two different versions of a lease for 528 Vine Street in Aspen Colorado, one which included Petroczky as a signatory and tenant and one which did not. [*Id*. at 3; ## 10-1; 10-2] The NOID explained that having two different versions for the same lease "calls into question the credibility of either lease," which "also bears on the determination of your credibility," and that "[b]y submitting two different versions of a lease, you exhibit a willingness to present falsified information to USCIS." [#1-2 at 3] USCIS also explained the deficiencies in other evidence, including phone bills, bank statements, friends' letters, and tax returns. [*Id*.] The NOID also discussed numerous inconsistencies between Plaintiffs' testimony in their interviews. [*Id.* at 3-4] The NOID outlined the findings from

12

the site visits and stated that Petroczky herself signed a sworn statement admitting that Plaintiffs entered the marriage for the purpose of obtaining immigration benefits, that she had never lived with Bartha, and that the couple had never consummated their marriage. [*Id*.] Thus, the record is clear that USCIS provided Plaintiff with the adverse evidence used to determine the validity of Plaintiffs' marriage.

Additionally, the NOID gave Petroczky thirty days to submit evidence as to why USCIS should not deny the Form I-130 and warned that "[f]ailure to do so within thirty days will result in the denial of your immigrant visa petition." [*Id*. at 5] Petroczky did not respond to the NOID within the required thirty days, but instead submitted a response more than two months later. [*Id*. at 6-14] The record thus shows that Plaintiffs were given the adverse evidence and the opportunity to respond—and indeed did respond—to the agency's evidence used to deny Form I-130. [#1-2] Accordingly, the Court does not find the agency's action arbitrary and capricious on this basis.[4] [5]

---

[4] Plaintiffs briefly assert that "[t]he denial of the Petitioners' Form I-130 violated their Fifth Amendment Due Process rights because they were not afforded the opportunity to cross-examine the adverse USCIS evidence." [#1 at ¶ 58] As an initial matter, the Court need not consider this claim because "[t]his conclusory and undeveloped assertion is insufficient to preserve the argument for review." *Ayala-Monroy v. Garland*, No. 20-9626, 2022 WL 2813234, at *2 (10th Cir. July 19, 2022); *see also Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999) ("We do not consider unsupported and undeveloped issues."). In any event, the claim fails for the same reasons discussed above: the record shows that Defendants provided the rationale for the denial and afforded Plaintiffs an opportunity to respond as required. In addition, the Tenth Circuit has "long required petitioners to demonstrate prejudice in connection with . . . due process claims," which Plaintiffs have failed to do. *Casco Ayala v. Garland*, 851 F. App'x 885, 888 (10th Cir. 2021). In short, this undeveloped argument fails.

[5] As noted in fn. 2, the Court need not analyze Defendants' jurisdictional argument regarding Form I-485 because it was not pled in the Complaint. Moreover, because the Court finds no error in the BIA's denial of the Form I-130 petition, any potential or implied challenge to the denial of adjustment of status necessarily fails.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [#10] is **GRANTED**.

DATED: August 22, 2025            BY THE COURT:

                                  s/Scott T. Varholak
                                  Chief United States Magistrate Judge